**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

**CRISS McELDRIDGE CLAY,**

    **Plaintiff,**

    v.                                      **CASE NO. 20-3220-SAC**

**GAEL ESPARZA, et al.,**

    **Defendants.**

## MEMORANDUM AND ORDER AND ORDER TO SHOW CAUSE

Plaintiff Criss McEldridge Clay is hereby required to show good cause, in writing, to the Honorable Sam A. Crow, United States District Judge, why this action should not be dismissed for failure to exhaust administrative remedies. The Court denies Plaintiff's Motion for Emergency Preliminary Injunction.

### I. Nature of the Matter before the Court

Plaintiff filed this *pro se* civil rights case under 42 U.S.C. § 1983. The Court granted Plaintiff leave to proceed *in forma pauperis*. Plaintiff is incarcerated at the Hutchinson Correctional Facility in Hutchinson, Kansas ("HCF"). This matter is before the Court on Plaintiff's Motion for Emergency Preliminary Injunction (Doc. 4). Defendants have filed a Response (Doc. 12) in opposition to the motion.

Plaintiff alleges in his Complaint that on August 9, 2020, he was sexually assaulted by Officer 1 and his right to privacy was violated. Plaintiff alleges that Officer 1 approached Plaintiff's cell and seemed "nervous for some reason." (Doc. 1–1, at 2.) Plaintiff alleges that Officer 1 started to unlock the port/bean hole of the cell and Plaintiff got his boxers on because he had taken them off to go to bed. *Id.* Plaintiff alleges that Officer 1 stepped back out of the cell to look down the run for some reason, and then came back into the walkway. Plaintiff turned around

and Officer 1 put the cuffs on him. Plaintiff alleges that "once [he] heard the click of the second cuff [he] began to pull away but was pulled back forcefully to the open bars by the CO." *Id*. Plaintiff alleges that he then "felt his other hand come around and pull [Plaintiff's] penis out of [his] boxers and begin stroking [Plaintiff]." *Id*. Plaintiff alleges that Officer 1 then quit and stepped back into the hallway and Plaintiff believes that within a minute or two another officer showed up. *Id*.

Plaintiff alleges that after the incident, Officer 1 and the other officer took Plaintiff to the nurse to get segregation clearance. Plaintiff told Nurse Shopteese that he needed to file a PREA and Officer 1 left the clinic. Plaintiff asked Nurse Shopteese if she wanted to "inspect the area to see if there were hairs from his arm or hands (Rape Kit) on [Plaintiff's] penis or scrotum." *Id*. at 3. Plaintiff alleges that Nurse Shopteese asked Plaintiff if he was physically injured, and Plaintiff responded that "he didn't cut me or anything." Nurse Shopteese then said she did not need to inspect Plaintiff. *Id*. Plaintiff met daily with a mental health provider and met with EIA investigators on August 18th. *Id*.

Plaintiff alleges that he was required to stripout again even though he had not left segregation and had just been stripped out before being put in an MRA cell and had no property in his possession or control. (Doc. 1–1, at 4.)

Plaintiff claims his Eighth Amendment rights were violated when Officer 1 sexually assaulted him. Plaintiff claims that Nurse Shopteese was negligent in failing to provide a Rape Kit to examine Plaintiff for evidence. Plaintiff also alleges that the sexual assault and requiring him to stripout a second time violated his Fourth Amendment right to privacy. Plaintiff alleges that Defendant Schnurr, Warden at HCF, was negligent and deliberately indifferent in failing to properly train staff regarding transgender inmates, and in failing to have a Victim Services Coordinator available. Lastly, Plaintiff alleges that grievance procedures were not properly followed and he

was denied a proper grievance process. (Doc. 1–1, at 4.) Plaintiff seeks compensatory and punitive damages, as well as injunctive relief in the form of policy changes.

Plaintiff alleges that he turned in an "informal resolution" to his Unit Team on August 10, 2020, but it was not returned to him to complete the grievance process. (Doc. 1–1, at 1.) Plaintiff alleges that because his informal resolution was not returned to him within ten days, he then "by default" exhausted his administrative remedies. (Doc. 1–1, at 9.)

Plaintiff also filed an "Emergency Grievance" on August 23, 2020, alleging that Officer 1 was in Plaintiff's cell house on that date during the 11–7am shift, and stating that he was not supposed to be in the same cell house as Plaintiff during the PREA investigation. (Doc. 1–1, at 8.)

Plaintiff filed a Motion for Emergency Preliminary Injunction (Doc. 4), alleging that a PREA investigation is pending regarding his alleged sexual assault and that despite being instructed by EAI investigators that he would have no contact with Officer 1, Defendant Warden Schnurr has allowed Officer 1 to be in Plaintiff's cell house. The Court granted Defendants an opportunity to respond to the motion, noting that the Court would screen Plaintiff's Complaint after resolution of the pending motion. (Doc. 6.) Defendants have filed a Response (Doc. 12), which includes an affidavit declaring that the PREA investigation concluded with a finding that Plaintiff's claims were unfounded, meaning "that the evidence does not support the inmate's complaint, and also that the evidence does support the conclusion that the allegations were unfounded in fact." (Affidavit of Mark Mora, Prison Rape Elimination Act Compliance Officer at HCF; Doc. 12–1, at 2).

The Response also alleges that Plaintiff failed to exhaust his administrative remedies prior to filing this action. The Affidavit of Doug Burris, Corrections Manager in the Division of Facilities Management at the Kansas Department of Corrections ("KDOC"), provides in relevant part that:

> 2. My duties as Corrections Manager include handling inmate grievances submitted to the Secretary of Corrections.
> 3. I carefully reviewed the grievance records of Criss McEldridge

> Clay (KDOC #102093) and found that Inmate Clay submitted two informal grievances related to the alleged assaults allegedly occurring on August 9 and 10, 2020 at Hutchinson Correctional Facility. True and Correct copies of those informal grievances are attached hereto as Exhibit A.
> 4. However, I found no grievances appealed to the Secretary of Corrections regarding the assaults allegedly occurring on August 9 and 10, 2020.

(Affidavit of Doug Burris; Doc. 12–4, at 2.)

Plaintiff has filed four additional motions to supplement (Docs. 26, 27, 29 and 30). Two of his motions seek to supplement his motion for preliminary injunction and two seek to supplement his response to Defendant Shopteese's motion to dismiss. The Court will grant the motions.

Plaintiff has also filed a motion to amend his complaint (Doc. 31), seeking to add "Supplement Jurisdiction" of claims in state tort law, medical malpractice, and assault and battery. Plaintiff does not attach a proposed amended complaint as required by the Court's Local Rules. Therefore, the motion is denied without prejudice. Plaintiff is advised to refrain from filing any more motions or supplements other than his response to this Memorandum and Order and Order to Show Cause regarding exhaustion.

## II. DISCUSSION

### 1. Exhaustion of Administrative Remedies

An inmate is required by the Prison Litigation Reform Act ("PLRA") to exhaust all available prison administrative remedies before filing a complaint in federal court. Section 1997e(a) expressly provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a); *see also Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010) (stating that under the PLRA "a prisoner must exhaust his administrative remedies prior to filing a lawsuit

4

regarding prison conditions in federal court") (citations omitted). "Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 524–25 (2002) (citation omitted); *see also Jones v. Bock*, 549 U.S. 199, 219 (2007) (stating that "the benefits of exhaustion include allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record") (citations omitted).

This exhaustion requirement "is mandatory, and the district court [is] not authorized to dispense with it." *Beaudry v. Corrections Corp. of Am.*, 331 F.3d 1164, 1167 n. 5 (10th Cir. 2003), *cert. denied*, 540 U.S. 1118 (2004); *Little*, 607 F.3d at 1249. A prison or prison system's regulations define the steps a prisoner must take to properly exhaust administrative remedies and a prisoner "may only exhaust by properly following all of the steps laid out" therein. *Little*, 607 F.3d at 1249 (citing *Woodford v. Ngo*, 548 U.S. 81, 90 (2006)). "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under [the] PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted). "The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion." *Jones*, 549 U.S. at 218.

In a suit governed by the PLRA, failure to exhaust is an affirmative defense and the defendant has the burden of proof regarding exhaustion of administrative remedies. *Roberts v. Barreras*, 484 F.3d 1236, 1241 (10th Cir. 2007). The issue of Plaintiff's failure to exhaust his available administrative remedies prior to filing his lawsuit must be determined before reaching the merits of his lawsuit. *Little*, 607 F.3d at 1249 ("unexhausted claims cannot be brought in court")

(citation omitted); *see also Jernigan*, 304 F.3d at 1032 (an inmate who does not complete the grievance process is barred from pursuing a §1983 claim).

For Kansas state prisoners, the administrative remedies require the inmate to seek an informal resolution with personnel who work with the inmate on a daily basis. K.A.R. § 44–15–101(b). If the informal resolution is unsuccessful, the inmate must progress through a three-level process that includes submitting a grievance report form to (1) the appropriate unit team member, (2) the warden of the facility, and (3) the office of the secretary of corrections. K.A.R. § 44–15–101(d). The procedure to follow at each level is described in detail in Kan. Admin. Regs. § 44–15–102.

Defendants have alleged that Plaintiff failed to exhaust his administrative remedies prior to initiating this action. *See* Doc. 12, at 8–11; Doc. 13, at 5 (Defendant Shopteese's Motion to Dismiss). Plaintiff acknowledges that he submitted an informal resolution to his Unit Team, but when he did not receive anything back he considered his administrative remedies exhausted "by default." The regulations do not provide for exhaustion "by default" if the informal resolution is unsuccessful. If an inmate does not receive a response to a grievance, they "may move to the next stage of the grievance procedure if a timely response is not received at any step in the grievance process." K.A.R. 44-15-101b. "If an inmate does not receive a response from the unit team within 10 calendar days, a grievance report may be sent to the warden without the unit team signature or signatures." K.A.R. 44-15-102(a)(2). "Each grievance report form shall include an explanation of the absence of the signature or signatures." *Id*.

The KDOC also allows an inmate to invoke a special grievance process when submitting grievances related to sexual assault. The process is similar to the normal grievance procedure, although it eliminates the need for informal resolution and does not impose time limits for the submission of grievances. Relevant here, under either K.A.R. 44-15-204(b) (Submission of

6

grievances containing sexual abuse) or K.A.R. 44-15-204(e) (Imminent sexual abuse), an inmate is required to label his or her grievance as a "Sexual Abuse Grievance" and to appeal to the Warden or Secretary of Corrections if no response is received. K.A.R. 44-15-204(c), (d), and (e).

The filing of a complaint pursuant to PREA does not satisfy the administrative grievance requirements. *Howard v. Rodgers*, No. 17-3019-DDC-TJJ, 2018 WL 3122175, at *4 (D. Kan. June 26, 2018), *reconsideration denied*, 2019 WL 480556 (D. Kan. Feb. 7, 2019), *aff'd*, 780 F. App'x 670 (10th Cir. 2019) (finding that the filing of a PREA complaint did not supersede the PLRA's exhaustion requirement) (citing *Barringer v. Stanley,* No. 5:16-CV-17-FDW, 2017 WL 1028595, at *2 (W.D.N.C. Mar. 16, 2017) ("Plaintiff's initiation of an action under the PREA simply does not satisfy the requirements for exhaustion of administrative remedies under PLRA."); *Omaro v. Annucci,* 68 F. Supp. 3d 359, 364 (W.D.N.Y. 2014) ("[T]he federal courts that have considered the issue have concluded that the PREA does not excuse an inmate's failure to exhaust his administrative remedies with respect to a claim of sexual misconduct."); *Lamb v. Franke,* No. 2:12-CV-00367-MO, 2013 WL 638836, at *2 (D. Or. Feb. 14, 2013) ("The PREA does not impose an alternative remedial scheme, nor does it supersede PLRA's exhaustion requirement.")); *see also Poventud v. Saldaris*, Case No. 18-CV-532, 2020 WL 1046095, at *3 (E.D.Wis. March 4, 2020) (citing cases finding that PREA complaint does not exhaust inmate's obligation to exhaust under the PLRA).

This grievance process was explained to Plaintiff on previous occasions. Plaintiff filed a supplement (Doc. 27) suggesting that he was told he did not need to file a grievance of any sort because a PREA was filed. Plaintiff attaches grievances which pre-date the incident at issue in this case. The attachments show that Plaintiff was questioning why he was told he needed to go through the informal grievance process when he had filed an "emergency sexual grievance" which he argued does not require the informal step in the grievance procedure. (Doc. 27, at 6.) Staff's

response informed Plaintiff that because the issue was being handled via PREA, his grievance would be handled as a normal grievance. *Id*.  Therefore, in April 2020, Plaintiff was informed that he needed to proceed under the normal grievance procedures and his grievance was not an "emergency" because a PREA investigation was already pending. *See also id*. at 5 (response to grievance stating that because a grievance was already properly reported per PREA it is to be handled via normal procedures and that this "has been addressed and confirmed with you by UTM Bell"); *Id*. at 4 (response from Warden informing Plaintiff that even though he labeled his grievances as "emergency" grievances, they were not determined to be emergencies because the issues was also being addressed per PREA and they are handled under the regular grievance procedures).

Plaintiff argues that he submitted his signed informal resolution receipt to show his attempt at exhaustion.  (Doc. 17, at 7.)  Plaintiff alleges that HFC has been "holding and refusing to file [Plaintiff's] grievances and informal resolutions attempt to stop or hinder [Plaintiff's] access to the courts."  *Id*.  Plaintiff alleges that under K.S.A. 44-15-102(2), if a report is unanswered the report is then sent to the warden, without signature.  *Id*. at 8.  Plaintiff asserts that nowhere in the regulation does is say the inmate is supposed to forward it, "and even if it did how when the Admin. or Unit Team has it."  *Id*.  Thus, Plaintiff argues that his informal grievance should have been forwarded to the warden and to the Secretary of Corrections by now.  *Id*.  Plaintiff alleges that staff had his informal grievances "and chose to not answer and return them."  *Id*. at 11.

Plaintiff has not shown that he is entitled to exhaustion "by default" because his informal requests were not returned to him.  Plaintiff should show good cause why this action should not be dismissed for failure to exhaust administrative remedies prior to filing suit.

### 2. Motion for Emergency Preliminary Injunction

Plaintiff filed a motion for emergency preliminary injunction (Doc. 4), alleging that a PREA

investigation is pending regarding his alleged rape by Officer 1.[1]  Plaintiff alleges that despite being instructed by EAI investigators that he would have no contact with Officer 1, Defendant Warden Schnurr has allowed Officer 1 to be in Plaintiff's cell house.

Defendants have responded, alleging that Plaintiff has a history of making unfounded or unsubstantiated sexual assault or harassment allegations against correctional officers. (Doc. 12–1, at ¶ 6; Affidavit of Mark Mora (hereinafter "Mora Affidavit").  Since Plaintiff's arrival at HCF on December 31, 2019, he has filed four PREA complaints against HCF staff which the investigations have documented as unfounded or unsubstantiated.  *Id*.  During her interview with EAI investigators, the nurse who examined Plaintiff, Nurse Shopteese, stated that during her examination of Plaintiff, Plaintiff was not upset and that Plaintiff's mannerisms were "odd". (Doc. 15, at 5, PREA Report) (Sealed).   Nurse Shopteese stated that in her professional opinion she did not believe Plaintiff was being truthful about the alleged abuse by Officer 1.  *Id*.  Regarding the incident alleged in this case, the PREA Investigation determined that Plaintiff's allegations were unfounded based upon observation of relevant video footage, retrieval of associated documentation, and interviews with the involved parties. *Id*.

To obtain a preliminary injunction, the moving party must demonstrate four things: (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in

---

[1] Plaintiff may not be entitled to injunctive relief if he has failed to exhaust his administrative remedies prior to filing suit.  "A plaintiff is required to exhaust administrative remedies before seeking a TRO or a preliminary injunction, just as he is required to do before seeking other remedies covered by the PLRA."  *Nellson v. Barnhart*, 454 F. Supp. 3d 1087, 1092 (D. Colo. 2020) (citing *Farmer v. Brennan*, 511 U.S. 825, 847, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994) ("When a prison inmate seeks injunctive relief, a court not need ignore the inmate's failure to take advantage of adequate prison procedures, and an inmate who needlessly bypasses such procedures may properly be compelled to pursue them."); *Little*, 607 F.3d at 1249 (addressing exhaustion before reaching the merits of a plaintiff's request for a preliminary injunction due to prison conditions)); *Cf. State of Kansas v. United States*, 192 F. Supp. 3d 1184, 1202 (D. Kan. 2016), *aff'd* 874 F.3d 1226 (10th Cir. 874 F.3d 1226) (finding analysis in *Jackson* instructive where court in *Jackson* found that PLRA "contain[ed] nothing expressly foreclosing courts from exercising their equitable power to issue injunctions to prevent irreparable injury pending exhaustion of administrative remedies" and "the court had inherent power to protect the prisoners while they exhausted prison grievance procedures") (citing *Jackson v. District of Columbia*, 254 F.3d 262, 268 (D. D.C. 2001)).   However, a preliminary injunction is still appropriate only when necessary to prevent irreparable injury.  *Id*. (citing *Jackson*, 254 F.3d at 267–68).

the absence of preliminary relief; (3) that the balance of the equities tip in the movant's favor; and (4) that the injunction is in the public interest. *Little v. Jones*, 607 F.3d 1245, 1251 (10th Cir. 2010). "[A] showing of probable irreparable harm is the single most important prerequisite for the issuance of a preliminary injunction." *Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1260 (10th Cir. 2004).

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008). A preliminary injunction is appropriate only when the movant's right to relief is clear and unequivocal. *Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005). Moreover, a federal court considering a motion for preliminary injunctive relief affecting the conditions of a prisoner's confinement must give "substantial weight to any adverse impact on public safety" and on prison operation. 18 U.S.C. § 3626(a)(2). Finally, a mandatory preliminary injunction, such as the one sought by Plaintiff, which requires the non-moving party to take affirmative action, is disfavored and therefore requires the moving party to make a heightened showing of the four factors above. *Little*, 607 F.3d at 1251. Because preliminary injunctions and TRO's are drastic remedies—"the exception rather than the rule—plaintiffs must show that they are clearly and unequivocally entitled to relief." *Adrian v. Westar Energy, Inc.*, No. 11-1265-KHV, 2011 WL 6026148, at *3 (D. Kan. 2011) (citations omitted); *see also Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1261 (10th Cir. 2004) (internal quotation marks omitted) ("[B]ecause a preliminary injunction is an extraordinary remedy, the [movant's] right to relief must be clear and unequivocal.").

Plaintiff sought a preliminary injunction alleging that a PREA investigation is pending regarding his alleged sexual assault and that despite being instructed by EAI investigators that he would have no contact with Officer 1, Defendant Warden Schnurr has allowed Officer 1 to be in

Plaintiff's cell house.  However, the PREA investigation is no longer pending and the allegations were determined to be unfounded.

The Court finds that Plaintiff has not met his burden to make a heightened showing that entry of a preliminary injunction is warranted; he has not demonstrated a likelihood of success on the merits such that his right to relief is clear and unequivocal.  Furthermore, a mandatory preliminary injunction, such as the one sought by Plaintiff, which requires the non-moving party to take affirmative action, is disfavored and therefore requires the moving party to make a heightened showing of the four factors above.  *Little*, 607 F.3d at 1251.

**IT IS THEREFORE ORDERED THAT** Plaintiff's motions to supplement (Docs. 26, 27, 29 and 30) are **granted.**

**IT IS FURTHER ORDERED THAT** Plaintiff's motion to amend his complaint (Doc. 31) is **denied without prejudice**.

**IT IS FURTHER ORDERED THAT** Plaintiff's Motion for Emergency Preliminary Injunction (Doc. 4) is **denied.**

**IT IS FURTHER ORDERED THAT** Plaintiff is granted until **November 14, 2020,** in which to show good cause why this action should not be dismissed without prejudice for failure to exhaust administrative remedies.

**IT IS SO ORDERED.**

Dated October 16, 2020, in Topeka, Kansas.

s/ Sam A. Crow
SAM A. CROW
U. S. Senior District Judge